IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LORI H.,

                Plaintiff,

    v.                                               Civil Action No.
                                                     3:18-CV-0472 (DEP)

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                Defendant.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM      PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

FOR DEFENDANT

HON. GRANT C. JAQUITH            KATHRYN S. POLLACK, ESQ.
United States Attorney for the       Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Acting Commissioner, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on April 5, 2019, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The matter is hereby REMANDED to the Acting Commissioner, with a directive that the Acting Commissioner retain a

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

psychiatric medical expert to examine plaintiff's medical records to determine whether she suffers from a somatic symptom disorder that substantially limits her ability to perform work related functions.

3) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Acting Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: April 12, 2019
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LORI H.,

                        Plaintiff,

vs.                                              18-CV-472

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                        Defendant.

-----------------------------------------------------------x

                    DECISION - April 5, 2019

        James Hanley Federal Building, Syracuse, New York

                    HONORABLE DAVID E. PEEBLES

         United States Magistrate-Judge, Presiding



                    A P P E A R A N C E S (by telephone)

For Plaintiff:      LACHMAN & GORTON
                    Attorneys at Law
                    1500 E. Main Street
                    Endicott, New York 13761
                      BY:  PETER A. GORTON, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of Regional General Counsel
                    26 Federal Plaza
                    New York, New York 10278
                      BY:  KATHRYN S. POLLACK, ESQ.




                    Eileen McDonough, RPR, CRR
                 Official United States Court Reporter
                          P.O. Box 7367
                    Syracuse, New York 13261
                         (315)234-8546
```

1    THE COURT: Okay. I will have to let that be the
2 last word.
3    Plaintiff in this action has commenced suit under
4 42, United States Code, Section 405(g), challenging a
5 determination by the Acting Commissioner finding that she was
6 not disabled at the relevant times and, therefore, ineligible
7 for the disability insurance benefits sought.
8    The background is as follows. Plaintiff was born
9 in April of 1968. She is just short of 51 years of age now;
10 was 44 years old at the time of the alleged onset of her
11 disability. She is 5-foot 5-inches in height. Her weight
12 has fluctuated, due to her thyroid condition, between 130 and
13 175 pounds. She's right-handed.
14    Plaintiff has an Associate's Degree which she
15 secured in 2005, and has taken additional college courses.
16 She was not a member of the military. Plaintiff has a
17 driver's license but claims that she does not drive because
18 she does not feel safe in doing so. Plaintiff lives in a
19 house in Endicott with her husband and two children, who at
20 the time of the hearing were 24 years old and 18 years old,
21 respectively, a son and daughter.
22    In terms of work, the record is somewhat vague.
23 She has worked from January 2010 to date in Broome County as
24 an activity leader one day per week; she was a dental
25 assistant in 2002, a pharmacy tech and trainer from 1999 to

1   2010, three days a week, roughly five hours per day, and a
2   cashier from November 2011 to January 2012 on a seasonal
3   situation part time.
4           Medically plaintiff has complained of many
5   different types of symptoms, including brain fog, fatigue,
6   dizziness, hypothyroidism, Lyme disease, depression, anxiety.
7   She suffers from degenerative disc disease of the cervical
8   spine, as reflected in a February 10, 2014 Magnetic Resonance
9   Imaging testing. That's at 11F. She has seen, as counsel
10  notes, many care providers; Dr. Tali Reeis-Martin, who
11  apparently is the primary care provider; Dr. Ronald Stram for
12  her Lyme disease; Dr. Timothy Howland for thyroid issues;
13  Dr. Joseph Loverro for fibromyalgia and pain; Nurse
14  Practitioner Nancy Evans and Dr. Ramanjan for thyroid;
15  Dr. Asha Gupta for allergies and immunology issues; Dale
16  Fluegal, a chiropractor, among others.
17          In terms of activities of daily living, plaintiff
18  indicates that her husband and children do most of her
19  chores. She is not social. She has not attended any of her
20  daughter's cheerleading events, did not attend her son's
21  college graduation. She did tell Dr. Long, however, at
22  page 385 and 391, that she does cleaning, laundry and
23  shopping, she does watch television, explores the internet
24  and reads.
25          Procedurally plaintiff applied for Title II

1 benefits on October 15, 2014, claiming disability based on
2 chronic fatigue, fibromyalgia, thyroid issues and immune
3 system disorder, and an onset date of July 1, 2012. Also
4 included in the claims was Lyme disease and Epstein-Barr.
5 That's at 75 and 231.
6 A hearing was conducted by Administrative Law Judge
7 Elizabeth Koennecke on March 27, 2017. ALJ Koennecke issued
8 an unfavorable decision on September 6, 2017. That became a
9 final determination of the Agency on March 20, 2018 when the
10 Social Security Administration Appeals Council denied her
11 request for review.
12 In her decision ALJ Koennecke applied the familiar
13 five-step sequential test for determining disability. After
14 determining that plaintiff was insured through March 31,
15 2016, she determined that plaintiff had not engaged in
16 substantial gainful actively between the alleged onset date
17 of July 1, 2012 and the date of last insured.
18 At step two she concluded that plaintiff suffers
19 from severe conditions/impairments that limit her ability to
20 perform basic work activity, including degenerative disc
21 disease of the cervical spine, atrial fibrillation and
22 hypothyroidism.
23 She concluded at step three, however, that the
24 conditions did not meet or medically equal any of the listed
25 presumptively disabling conditions set forth in the

1 Commissioner's regulations, considering listing 1.04
2 specifically.
3 After examining the medical evidence, ALJ Koennecke
4 concluded that plaintiff retains the residual functional
5 capacity to lift 20 pounds continuously, 50 pounds frequently
6 and 100 pounds occasionally; carry 20 pounds continuously and
7 50 pounds frequently; sit eight hours at a time and in a
8 workday; stand eight hours at a time and in a workday; and
9 walk eight hours at a time and in a workday.  There were
10 other limitations also set forth, both exertional and
11 non-exertional, in addition.
12 In applying that residual functional capacity, ALJ
13 Koennecke concluded at step four plaintiff is unable to
14 perform any of her past relevant work.
15 At step five, after noting that if the
16 Medical-Vocational guidelines, or Grids, were applied, based
17 on the ability to perform a full range of medium work, a
18 finding of no disability would be directed by Rule 203.28.
19 ALJ Koennecke concluded based on testimony of a vocational
20 expert that plaintiff, despite her limitations and the
21 non-exertional limitations limiting the job base on which the
22 Grids are predicated, could still perform as a photocopy
23 machine operator, a marker and a kitchen helper.
24 As you know, my task is limited to determining
25 whether correct legal principles were applied and the

1  termination is supported by substantial evidence, defined as
2  such evidence as reasonable minds would accept to support a
3  conclusion.  It is an extremely deferential standard.
4  　　　　　I note that we're dealing with a closed period of
5  July 1, 2012 to March 31, 2016.  At step two the regulations
6  provide that an impairment or combination of impairments is
7  not severe if it does not significantly limit the claimant's
8  physical or mental abilities to do basic work activities.
9  That's 20 CFR Section 404.1521(a).  That section goes on to
10 describe what is meant by basic work activities, including
11 the abilities and aptitudes necessary to do most jobs.
12 　　　　　Clearly the second step requirement is de minimis
13 and intended to screen out only the weakest of cases.  If a
14 condition or impairment is improperly omitted at step two,
15 the error could be harmless if the Commissioner continues
16 through the sequential analysis provided that limitations
17 associated with that condition are included in the RFC.  A
18 decision is vulnerable to challenge, however, when the ALJ
19 omits an impairment at step two and also fails to consider
20 the effects of that impairment in the succeeding steps
21 leading to the decision without substantial evidence to
22 support.
23 　　　　　In this case, and this is an interesting one, I
24 have to say, one has to consider the nature of somatic
25 symptom disorders.  Somatization was defined by Magistrate

1  Judge J. Francis as, "The conversion of mental experiences or
2  states into bodily symptoms," citing Dorland's Dictionary.
3  That's in *Anderson versus Commissioner of Social Security*,
4  2002 WL 31045861.  He goes on to state, and that's in
5  footnote 3, goes on to state, "A patient with this disorder
6  may simply complain of being sickly or may have specific
7  symptoms, such as double vision, fainting, abdominal pain,
8  bowel problems, painful menstruation, or sexual indifference.
9  These complaints are often presented in a dramatic and
10 exaggerated manner, but the patient is vague about the exact
11 nature of the symptoms."
12         The nature of somatic or somatoform disorder is
13 also observed and noted in *Fagner versus Berryhill*, 2017 WL
14 2334889 from the Western District of New York, where it was
15 noted that somatization is, "The expression of mental
16 phenomena as physical (somatic) symptoms."  Citing the Merck
17 Manual.
18         The Commissioner's regulations also recognize the
19 existence of somatic symptoms, including at 12.07A, noting
20 that, "These disorders are characterized by physical symptoms
21 or deficits that are not intentionally produced or feigned,
22 and that, following clinical investigation, cannot be fully
23 explained by a general medical condition, or other mental
24 disorder."
25         This plaintiff seems to present a classic case of

1  somatization, and that was specifically noted by the medical
2  examiner, Dr. Chandrasekhar, who noted at page 941 most of
3  the physical manifestations appear to be from somatization.
4  I also note that Dr. Winkler at page 905 indicated a need to
5  rule out physical issues. Dr. Long also noted that physical
6  symptoms seem to be exacerbated by stress. That's at
7  page 391. And Dr. Reeis-Martin noted that plaintiff's
8  depression could be related to what is going on; in other
9  words, it could be related to her mental condition. At 399,
10 401 and 403, and there are other entries as well.
11         The ALJ Koennecke rejected the somatic symptom
12 disorder at step two based on a lack of objective evidence.
13 That's clearly not supported and it does not provide
14 substantial evidence. The Court noted in *Easter versus*
15 *Bowen*, 867 F.2d 1128, from the Eighth Circuit 1989, that it
16 is inappropriate to reject the existence of somatoform
17 disorder and its disabling effects based upon the lack of
18 objective evidence alone. Plaintiff clearly did not allege
19 the existence of a mental condition in applying for benefits,
20 but that is consistent with, as counsel argues, the very
21 nature of a somatic disorder. She believes her symptoms are
22 caused by physical issues, but she presents a classic case
23 because she has consulted with so many physicians and many
24 physicians have been unable to pinpoint the source of her
25 issues.

1          The error at step two in this case is not harmless
2    because there are no limitations set forth in the RFC that
3    relate to and address the somatic symptom disorder.  It also
4    affects the hypothetical at step five and, therefore,
5    undermines the Commissioner's determination.
6          In my view this is a case of where I agree with
7    plaintiff's counsel that there should be a psychiatric
8    medical expert retained to review the records of plaintiff's
9    treatment to determine whether there is, in fact, proof or
10   evidence of a somatic disorder.  The ALJ clearly has a duty
11   even in counseled cases to fill gaps.  Dr. Winkler and
12   Dr. Chandrasekhar both appear to suggest a need for further
13   evaluation to determine the extent of somatization.  There
14   are references also to plaintiff, by the way, seeing a
15   psychologist at 660 and 661.
16         You know, listing 12.07, I agree with counsel, it
17   could be argued that it's harmless error not to consider
18   12.07 since the ALJ found that the B criteria were not met,
19   but clearly that did not take into account the somatization
20   and the somatic symptom disorder, and so I am not
21   definitively able to say that that's harmless error.  I don't
22   find definitive proof of disability.
23         And so I'm going to grant judgment on the pleadings
24   to plaintiff and remand the matter with the directive that
25   the Agency retain a psychiatric medical examiner to review

plaintiff's records and determine disability, and specifically to consider the possibility of a somatic symptom disorder.

It's been an interesting case.  I appreciate both of your arguments, and I hope you have a good weekend.

\*          \*          \*

C E R T I F I C A T I O N

      I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

                                    _____
                                    EILEEN MCDONOUGH, RPR, CRR
                                    Federal Official Court Reporter